NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0490n.06

No. 08-3854

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 09, 2010
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| v. | ) ) | STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| NED V. MARTIN, | ) ) | |
| Defendant-Appellant. | ) ) ) | |

Before: GIBBONS, SUTTON, and WHITE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Ned Martin appeals the district court's denial of his pre-trial motion to suppress and its imposition of a below-Guidelines, 130-month sentence after he pled guilty to three counts of receipt, possession, and distribution of child pornography. For the following reasons, we affirm Martin's sentence and the denial of his motion to suppress.

I.

Between December 2006 and September 2007, Martin used an internet file-sharing service to download and share numerous images and video files of real minors engaged in sexually explicit conduct. On January 10, 2007, the National Center for Missing and Exploited Children received a report from Photobucket.com concerning a user who uploaded six files to its website on December

12, 2006, some of which depicted children engaging in sexually explicit conduct. Once the identity of the user was confirmed, law enforcement authorities were notified.

On September 19, 2007, two officers interviewed Martin at his residence in Boardman, Ohio, at which time he admitted to downloading, transmitting, and possessing child pornography over the past four to five years. He further admitted to uploading child pornography to Photobucket.com in December 2006 and reported that his computer contained hundreds of pornographic images of children that had been downloaded and traded. After his computer was seized, analyzed, and found to contain child pornography, Martin was interviewed again by law enforcement on November 17, 2007. The Presentence Investigation Report ("PSR") indicated that Martin's computer had 52 images and 64 video files of child pornography, totaling 4,852 images.

In February 2008, Martin was indicted on one count of receipt and distribution of material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2), one count of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). On February 22, 2008, Martin was arraigned and entered a plea of not guilty.

Martin filed a pre-trial motion to suppress the oral statements that he made to the officers in September and November 2007. Martin claimed that the interviews violated his constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court denied Martin's motion after holding an evidentiary hearing and a day later, Martin entered an unconditional guilty plea to the indictment without a plea agreement. During the plea colloquy, Martin indicated that he understood his rights and was waiving them. After accepting Martin's plea, the district court remarked: "And

unless there's something further on this, we would stand adjourned." Martin's counsel did not state any objections or seek to reserve any appellate rights related to the plea.

At his sentencing hearing, Martin indicated that he had received the PSR and reviewed it with his attorney. The district court grouped the three counts of the indictment and calculated a base offense level of 22. U.S.S.G. § 2G2.2(a)(2). It then added two levels for materials involving prepubescent minors, U.S.S.G. § 2G2.2(b)(2), two levels for distribution of child pornography, U.S.S.G. § 2G2.2(b)(3)(F), four levels for masochistic or sadistic materials, U.S.S.G. § 2G2.2(b)(4), two levels for use of an interactive computer service, U.S.S.G. § 2G2.2(b)(6), and five levels for conduct involving 600 or more images, U.S.S.G. § 2G2.2(b)(7)(D). This resulted in an adjusted offense level of 37. After granting Martin a two-level reduction for acceptance of responsibility, the district court calculated a total offense level of 35 and a criminal history category of I. This resulted in a Guidelines range of 168–210 months on counts 1 and 2 of the indictment, and 120 months, the statutory maximum, on count 3.

Martin spoke at the sentencing hearing and said that he started using a computer and internet chat rooms after his partner died of HIV/AIDS. He said that he was "depressed" at the time and "started talking in chat rooms to people that I shouldn't have talked to" and "started looking at things that they would show me." He stated that he was "very sorry for all those things that I did . . . [i]n those chat rooms." Martin's lawyer argued for a downward variance because his client was molested at a young age, "just sat behind a computer" while committing his crimes, and did not pay for the child pornography. He also cited Martin's age and lack of criminal history. The government requested a within-Guidelines sentence and noted that Martin had not recognized the harm caused

to the children by his actions, that his crimes took place over a period of four to five years, that he did not cease his activities until law enforcement confiscated his computer, and that his computer had numerous illicit images.

The district court then analyzed the Guidelines and applied 18 U.S.C. § 3553(a). It first considered the nature and circumstances of Martin's crime, remarking that "this case is somewhat similar or somewhat typical of these types of cases" and that "[t]here is nothing to suggest a lower sentence or a higher sentence typically." The court then considered Martin's history and characteristics, specifically his own past sexual abuse, lack of criminal history, lack of violence, full-time employment, family relations, and substance abuse problems. These factors "suggest[ed] a somewhat lower sentence may be sufficient" to punish Martin and provide deterrence. The district court then stated it was "not sure" that the applicable Guidelines range served the purposes of § 3553(a), citing its own surveys of jurors "in cases where they heard the actual conduct and including cases where they saw the actual images." In these surveys, which the district court described as an "academic exercise," and which pertained to two child pornography trials, the district court elicited proposed sentences from jurors in order to compare its own sentence with that proposed by a cross-section of the public. The jurors' proposed sentences were substantially lower than those imposed by the court (and substantially lower than the statutory minimum of 60 months imprisonment for counts 1 and 2), and the district court took this to be "at least some suggestion" that Martin deserved less than the lowest Guidelines sentence of 168 months.

The government indicated that the juror surveys were not a good indicator of an appropriate sentence for Martin because the jurors did not have the Sentencing Commission's expertise, were

not confronted with victims, did not know the typical sentences for crimes, and were unfamiliar with sex-offender treatment and recidivism. The district court argued that the jurors were a fair cross-section of the community and asked, "I guess the question . . . is[,] I'm not going to get an answer[,] I'm not sure how I mess around with it[,] but the question becomes where do they get these guidelines?" The court explained the relevance of the juror surveys to Martin's case:

> But what I'm trying to go to is just to raise the question myself as to what sentence reflects just punishment[,] affords adequate deterrence, protects the public, and reflects the seriousness of the offense. So I think taken as a whole the Sentencing Guidelines are too high with regard to that. So I think a sufficient but no greater sentence is—could be less than that.

The district court then varied downward from the Guidelines range of 168 to 210 months, and imposed a prison term of 130 months on counts 1 and 2 and the statutory maximum of 120 months on count 3, all to run concurrently. It justified this variance by referencing Martin's lack of criminal history, depression, substance abuse, and age. These factors led the district court to believe that Martin did not pose a high risk of recidivism. In addition, the district court considered sentencing disparities, especially with regard to comparable state convictions. Martin timely appealed the district court's ruling on his suppression motion and his sentence.

II.

"Whether a defendant has waived his right to appeal is a legal question that an appellate court reviews *de novo*." *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (citing *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005)).

"Generally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *Id.* (quoting *United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991)).

A defendant may enter a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), which allows him to "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion." Rule 11(a)(2) imposes an "affirmative duty on the defendant to preserve *all* potential collateral challenges through the preservation mechanism." *Pickett*, 941 F.2d at 416 (emphasis in original). "[I]n the absence of a court-approved reservation of issues for appeal," a defendant "waives all challenges to the prosecution except those going to the court's jurisdiction."[1] *Id*. (quoting *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal quotation marks omitted)).

We have applied this waiver doctrine repeatedly to bar the appeal of the denial of a suppression motion based on *Miranda* where the defendant entered an unconditional guilty plea. *See, e.g.*, *United States v. Pinkerton*, 279 F. App'x 382, 384 (6th Cir. 2008); *United States v. Jackson*, 238 F. App'x 45, 49 (6th Cir. 2007); *United States v. Demery*, No. 92-3636, 1993 U.S. App. LEXIS 13214, at *6 (6th Cir. June 2, 1993). As we noted in *Martin*, a defendant's failure to preserve his right to appeal the denial of a pre-trial motion may be excused if it constitutes harmless error. 526 F.3d at 932 n.2. For example, this requirement has been excused where the transcript of the plea hearing made clear that the plea was conditional, and both the parties and the district court were aware of the conditional plea. *Id*. (discussing *United States v. Ormsby*, 252 F.3d 844, 848 n.3 (6th Cir. 2001)).

---

[1]"To successfully challenge the district court's jurisdiction, a defendant who enters a guilty plea must establish that the face of the indictment failed to charge the elements of a federal offense." *Martin*, 526 F.3d at 934 (citations omitted). Martin has made no such claim.

In this case, Martin did not reserve his right to appeal the district court's denial of his suppression motion when he pled guilty. There is no indication in the plea transcript that Martin intended to plead conditionally with the full knowledge of the district court and the government. Therefore, we hold that Martin has waived his right to appeal the denial of his suppression motion.

III.

We review the district court's sentencing determination "under a deferential abuse-of-discretion standard" and apply clear-error review to its factual findings. *United States v. Gall*, 552 U.S. 38, 41, 51 (2007). This review has procedural and substantive components. *Id.* at 51. Because Martin alleges only that the length of his sentence was not supported by the district court's factual findings, we need not address the procedural reasonableness component.

"In evaluating substantive reasonableness, [this] Court examines whether the length of the sentence is 'sufficient but not greater than necessary, to comply with the purposes' of sentencing as set forth by Congress in the sentencing statute." *United States v. Recla*, 560 F.3d 539, 549 (6th Cir. 2009) (quoting 18 U.S.C. § 3553(a)) (citation omitted). We must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Gall*, 552 U.S. at 51. Sentences outside of the Guidelines range are not presumptively unreasonable and we "may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Id*.

"A sentence is substantively unreasonable if the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Lapsins*, 570 F.3d 758,

772 (6th Cir. 2009) (internal quotation marks and citation omitted). A sentencing judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Because a rebuttable presumption of reasonableness applies to within-Guidelines sentences, the defendant's burden of showing that a below-Guidelines sentence was not sufficiently lenient is "demanding." *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008).

Martin argues that the district court abused its discretion when it sentenced him to more than the 60-month mandatory minimum on counts 1 and 2 despite concluding that "the Sentencing Guidelines are too high" based upon its juror surveys. Martin contends that the district court's findings supported a sentence at the statutory minimum because the jurors surveyed by the court in prior cases had suggested sentences far below both the Guidelines and the statutory minimum. He argues that his lack of criminal history, the fact that he never sold child pornography, his remorse, and cooperation with federal authorities warranted the statutory minimum sentence.

We disagree. There is no indication that the district court selected a 130-month sentence arbitrarily or as a result of considering improper factors. The sentencing transcript reveals that the district court granted Martin a downward variance after carefully considering his individual characteristics and the nature of the crime. The district court began the hearing by stating that Martin's case was typical of child pornography cases and that there was "nothing to suggest a lower sentence or a higher sentence" than those given to other defendants. It balanced this analysis with a full recounting of mitigating factors in Martin's favor, including his lack of a criminal history, lack of a violent past, steady employment, the decreased likelihood of recidivism, and his age. In light

of these mitigating factors, the district court expressed concern that the Guidelines produced a sentencing range that was beyond what was necessary to satisfy the requirements of 18 U.S.C. § 3553(a)(2)(A)–(B). Although the nature of the pornography and the number of images added nine levels to his base offense level, the district court also gave Martin a two-level reduction for acceptance of responsibility. The court heard extensive arguments from counsel as well as a statement from Martin himself. We therefore find that the district court's consideration of the § 3553(a) factors and Martin's individual circumstances was thorough and complete, as was its explanation of its decision to grant Martin a downward variance that would produce a punishment sufficient to reflect his crime.

Martin's reliance upon the juror surveys is misplaced. The district court indicated that it was engaging in an "academic exercise" to investigate whether the Guidelines sentencing ranges were in line with community beliefs. Although the court weighed factors in favor of a Guidelines sentence, it ultimately granted Martin a downward variance that was 38 months below the lower end of the Guidelines range. There is no indication in the record that the district court relied solely, or even primarily, upon the juror surveys and then ignored the results. Moreover, we question whether surveys of a small sample of juries in child pornography cases result in meaningful data with which to assess the suitability of the applicable Guidelines. When juries are asked to determine whether the government has proven guilt beyond a reasonable doubt, they are given the facts and the law—necessary tools to make that decision. On the other hand, a jury asked to select a sentence without receiving any more information than it had to determine guilt is acting without the tools necessary for the sentencing decision. By contrast, a district judge imposing sentence knows the

punishment selected by Congress and congressional policy concerns, the Guidelines adopted by the Sentencing Commission and the applicable range, and the information in the PSR, in addition to the facts and law known to the jury. Moreover, the judge is aware of congressional policy expressed in the § 3553(a) factors. The judge also has the benefit of the judge's own experience and that of the probation officer and hears from counsel, the defendant himself, and sometimes victims, family members, or others before imposing sentence.

Our doubts about the value of juror surveys notwithstanding, the district court in this case balanced all of the relevant factors and exercised sound discretion in choosing a sentence that was sufficient to meet the goals of § 3553(a). *See United States v. Collington*, 461 F.3d 805, 808, 811 (6th Cir. 2006) (upholding a downward variance where the district court considered the § 3553(a) factors and explained the reasons underlying its chosen sentence). In these circumstances, we are "very reluctant to find the sentence unreasonable" and decline to substitute our judgment for the district court's discretionary determination of the length of Martin's sentence. *Id.* at 811; *see also United States v. Buchanan*, 449 F.3d 731, 739–40 (6th Cir. 2006) (Sutton, J., concurring).

## IV.

For the foregoing reasons, we affirm Martin's sentence and the district court's denial of Martin's motion to suppress.